THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARI D.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22 C 6776 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| FRANK BISIGNANO, | ) | |
| Commissioner of | ) | |
| Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

ORDER[3]

Before the Court is Plaintiff Kari D.'s memorandum in support of summary

judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision

denying her application for disability benefits (Dkt. 17: Pl. Mem. in Support of Summ. J.:

"Pl. Mem.") and Defendant's motion and memorandum in support of summary

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor, Lee Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On December 9, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 8.)

judgment (Dkt. 20: Def. Mot. for Summ. J.; Dkt. 21: Def. Mem. in Support of Summ. J.: "Resp.")

I.      Procedural History

Plaintiff filed her application for disability insurance benefits on February 8, 2019. (R. 391-97.) She alleged that her onset date was July 12, 2017. (*Id.*) Her date last insured was December 31, 2018. (R. 15.) Twice, on August 24, 2020 (R. 143-58), and June 24, 2021 (R. 165-82), different ALJs found Plaintiff not disabled. Both decisions were subsequently remanded by the Appeals Council for additional consideration by an ALJ. (R. 159-61, 183-88.)

As relevant here, in the second remand order, the Appeals Council disagreed with ALJ Janice Bruning that Plaintiff's multiple neurofibroma secondary to neurofibromatosis, type 1 was a non-severe impairment.[4] (R. 185.) Therefore, the Appeals Council instructed the ALJ on remand to give further consideration to and evaluation of Plaintiff's neurofibroma secondary to neurofibromatosis, type 1 to determine its severity and impact on Plaintiff's ability to perform work activities. (R. 186.) Additionally, the Appeals Council directed that, "if warranted and available," the

---

[4] Neurofibromas are benign tumors that grow on nerves in the body. Neurofibromas can grow on nerves in the skin, under the skin, or deeper in the body, including in the abdomen, chest, and spine. Neurofibromatosis type 1 is a genetic disorder that causes neurofibromas to form. https://www.hopkinsmedicine.org/health/conditions-and-diseases/neurofibromas *visited on* August 2, 2025.

ALJ should obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments." (*Id.*)

On February 9, 2022, Plaintiff appeared for a third hearing before ALJ Bruning. (R. 165-82.) The ALJ heard testimony from Plaintiff, who was represented by an attorney, Plaintiff's mother, and a vocational expert. On April 1, 2022, ALJ Bruning again found Plaintiff not disabled for the period between her onset date of July 12, 2017 and her date last insured of December 31, 2018. (R. 12-32.) This time, the Appeals Council denied review (R. 3-8), making the ALJ's decision the final decision of the Commissioner. *Pufahl v. Bisignano*, No. 24-1545, 2025 WL 1742967 (7th Cir. June 24, 2025).

II.    ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her onset date and had not had any earnings since 2013. (R. 18.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of neurofibroma, secondary to neurofibromatosis, type 1, neuropathy, and obesity. (*Id.*) At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 19-20.)

Next, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work, except that she could never climb ladders, ropes or scaffolds.

She could not more than occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl. She could no more than frequently reach in all directions bilaterally and could no more than frequently use her hands to handle, finger, or feel bilaterally. (R. 20.)

At Step Four, the ALJ found that Plaintiff could not perform her past work as a cashier. (R. 42.) At Step Five, the ALJ found there were significant jobs in the national economy that Plaintiff could perform pursuant to her residual functional capacity, including charge account clerk, information clerk, and circuit board tester. (R. 25.) Therefore, the ALJ found that Plaintiff was not disabled. (*Id.*)

III.    Legal Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id.* (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

IV.    Analysis

Plaintiff argues generally that the residual functional capacity determination was not supported by substantial evidence. (Pl. Mem. at 6.) She separately contends that the ALJ wrongly weighed the opinion of her treating doctor and that her evaluation of Plaintiff's subjective symptoms was patently wrong. (Pl. Mem. at 9, 11.) After considering the evidence and the ALJ's reasoning, the Court agrees that she did not support the residual functional capacity with substantial evidence. Thus, remand is required.

A.    Medical History

Plaintiff's neurofibromatosis type 1 caused dozens of benign tumors to grow all over her body. (R. 659.) Physical examination notes from September 2017 document that the lesions are "everywhere; no spared parts." (R. 661.) As is common with the disease, some of the tumors were located on top of Plaintiff's skin, but others grew subcutaneously (under the skin) or deeper. For example, an August 2017 MRI noted a tumor growing on the nerves connected to her upper right arm. (R. 661-62.)

At least since 2013, Plaintiff began having excision surgeries to remove some of the neurofibroma tumors. (R. 133.) She had surgeries September 2013, September 2014, May 2017, May 2018, December 2018, and May 2019. (*Id.*; R. 598, 600, 659, 698, 760, 891.) Each excision surgery removed anywhere from 5-10 to more than 60 lesions from locations including Plaintiff's eyelids, upper arms, back, scalp, buttocks, nose, hands, and feet. (*Id.*)

B.    The ALJ's Residual Functional Capacity is Not Supported by
       Substantial Evidence.

In finding Plaintiff able to perform sedentary work with additional postural limitations, the ALJ's opinion rests on several unsupported conclusions about the medical evidence. As described above, Plaintiff suffers from a severe dermatological condition that causes lesions to grow all over her body. What is unclear to the Court is whether or how the ALJ considered impact of Plaintiff's lesions and her increasingly frequent need for excision surgeries. The Court struggled to evaluate the ALJ's opinion

because the ALJ both omitted consideration of that line of evidence and, relatedly, made

medical conclusions beyond her expertise. These errors require remand.

The ALJ's reasons for her residual functional capacity determination focus on

Plaintiff's generally "normal" physical examinations. Specifically, the ALJ cites:

- Full extremity strength, muscle tone, muscle bulk, normal gait and coordination, and intact range of motion in June 2017 (R. 22);

- Plaintiff being "well-developed and well-nourished, with normal range of motion throughout the musculoskeletal system and without edema" at a surgical consultation in February 2018 (R. 21);

- "Normal" physical examination "other that her lesions" after excision of 65 tumors in May 2018 (*Id.*);

- Plaintiff "doing well overall" at a surgical follow up in July 2018, although she reported that lesions on her feet were bothering her (*Id.*);

- Plaintiff being "well-developed and well-nourished with normal range of motion . . ." around the time of another excision of lesions on her feet, arms, right hand, and face in December 2018 (*Id.*);

- Plaintiff being in "excellent condition" immediately following surgery (*Id.*);

- That "despite requiring further rounds of excisions" into 2019, Plaintiff reported doing well and a physical examination was unremarkable "other than the lesions." (*Id.*)

The Court recognizes that ALJs regularly consider a claimant's physical

capabilities as support for their residual functional capacity determination. But in this

case, the Court is unconvinced that consideration of Plaintiff's physical condition

adequately captures limitations caused by her impairments. Notably, at least three

times in her opinion, the ALJ wrote that Plaintiff's physical condition was normal

"except for" her lesions. This leaves unanswered the question of what sorts of limitations the lesions, and the multiple surgeries to remove them, might cause.

While the ALJ acknowledged Plaintiff's complaints of pain, nowhere in the opinion does the ALJ address the evidence concerning the severity of the lesions themselves. And the evidence suggests that Plaintiff's condition was both severe and worsening. Her doctors regularly noted the difficulties caused by the dozens (or more) of tumors all over her body. For example, in June 2017, Plaintiff's treating doctor, James Tonsgard, M.D., wrote that Plaintiff "is covered in relatively large neurofibromas which are causing problems. I would really like to see her have a number of these removed." (R. 648-49.) He further recorded that the neurofibromas had "grown significantly" and many were in places that were "easily traumatized" such as the back of Plaintiff's head or hands. (R. 646.) In September 2017 plastic surgeon Lawrence Gottlieb, M.D., noted that Plaintiff had "diffuse global neurofibroma everywhere; no spared parts." (R. 661.) Separately, Dr. Gottlieb reviewed a recent MRI of Plaintiff's upper right arm, which showed an "enlarging soft tissue mass" in Plaintiff's right humerus. (R. 663.)

In February 2018, Dr. Gottlieb evaluated Plaintiff for excision of "multiple bothersome neurofibromas" that had "grown significantly." (R. 684.) As part of his examination, the doctor provided further insight about Plaintiff's 2017 MRI of the tumor on her arm, this time commenting that the lesion was "intimately associated with neurovascular structures" and noting that the Plaintiff complained of right-hand pain

and locking in her fingers. (*Id.*) The doctor also noted that the tumor had been excised twice before, but that it recurred each time. (*Id.*) After Plaintiff had excision surgery in May 2018, the doctor agreed with Plaintiff's request to have additional bothersome lesions removed from her hands and feet. (R. 739.) Plaintiff ultimately had more excision surgeries in December 2018 and May 2019.

While an ALJ does not need to discuss every piece of evidence, she cannot ignore an entire line of evidence. *Combs v. Kijakazi,* 69 F.4th 428, 435 (7th Cir. 2023.) In this case, the ALJ failed to evaluate evidence concerning the severity of Plaintiff's lesions themselves, evidence that her condition was worsening, and any limitations connected to the number, size, and locations of the lesions, as well as Plaintiff's increasingly frequent need for excision surgeries. By missing this entire line of evidence, the ALJ failed to build a logical bridge to her conclusion that Plaintiff was able to work.

The Appeals Council's second remand order provides particular clarity on the importance of the ALJ considering the severity of Plaintiff's lesions themselves. In remanding the case, the Council made the following observations about the type of evidence likely to be most relevant for the ALJ when determining Plaintiff's residual functional capacity:

> However, in addition to the continuous growth of neurofibroma and repeated surgical interventions, the record also shows that the claimant's doctors have noted that the neurofibromas grow significantly and are associated with discomfort and are in body locations that are easily subject to trauma, such as on the claimant's hands. Further, the claimant's doctors note that the large

neurofibromas are causing problems and especially those around the claimant's hands, forearms and eyes need to be removed. While this evidence is not specific about functional deficits, it suggests more than a slight abnormality imposing only minimal effects. Further evaluation of the functional limitations, if any, created by the presence of and consistent and frequent surgical removal of large neurofibromas is warranted.

(R. 185.)

The Court recognizes that the ALJ was not required to follow the directives of the Appeals Council, and that the ALJ's opinion is assessed – as always – for substantial evidence. *Thomas C. v. Kijakazi*, No. 20 C 6678, 2023 WL 4665367, at *3 (N.D. Ill. July 20, 2023); *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011.) But the comments above highlight the Court's own concerns that the ALJ failed to engage with evidence relevant to Plaintiff's residual functional capacity. That Plaintiff had full muscular strength in her extremities or recovered well after each of her excision surgeries may not address the difficulties she faced because of the number, location, or size of the tumors themselves.

And while the ALJ was similarly not obligated to follow the Appeals Council's suggestion that she engage a medical expert, neither was she entitled to make lay decisions about Plaintiff's medical condition. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) ("ALJ 'must not succumb to the temptation to play doctor' or reach conclusions outside his lay expertise.") (internal citations omitted). The ALJ's apparent decision to overlook evidence concerning the severity and limiting effects of Plaintiff's lesions and surgeries suggests that she made that error as well.

Because the ALJ omitted a line of evidence, the Court is unable to trace the ALJ's reasons for determining Plaintiff's RFC. [5] Therefore, remand is required.

CONCLUSION

For the reasons explained above, the Court grants Plaintiff's motion to remand the ALJ's decision (Dkt. 17) and denies Defendant's motion for summary judgment (Dkt. 20).

SO ORDERED.

ENTER:

_Laura K. McNally_

LAURA K. MCNALLY
United States Magistrate Judge

DATED: August 11, 2025

---

[5] It is well established that evidence from after the date last insured may be relevant to establishing disability within the applicable timeframe. *Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012) (rejecting government's argument that post-DLI evidence is irrelevant). In this case, Plaintiff's 2019 excision surgery – the third in the prior 12-month period – tended to help prove that Plaintiff's neurofibromatosis was worsening.